IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,382

STATE OF KANSAS,
*Appellee*,

v.

CHASE L. COBLE,
*Appellant.*

SYLLABUS BY THE COURT

When:  (1) the State charged three identical counts of aggravated arson; (2) the jury instructions and verdict form failed to distinguish between those counts; (3) the jury expressed its confusion in aligning the instructions and verdict form with the generic counts alleged; (4) that confusion was not ameliorated by the court or in the record; (5) the jury convicted on one count while acquitting on the others; and (6) the record reflects arguable evidence insufficiency questions on some or all of the convictions, a reviewing court's inability to reliably associate particular conduct with the count of conviction frustrates appellate review and adversely implicates the defendant's rights to due process. Under the circumstances of this case, reversal of the conviction is required.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 26, 2019. Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 15, 2021. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

1

*Thomas R. Stanton*, district attorney, argued the cause, and *Keith E. Schroeder*, former district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  A jury convicted Chase L. Coble of one count of aggravated arson, but acquitted him of two others. All charges were alleged to have occurred at different times, but arose after firefighters responded to reports of fire and smoke coming from Coble's 12th-floor apartment, where he had conducted more than 50 self-described chemistry experiments. He said he was unaware of any risks associated with these activities.

The problem on appeal is that nothing in the record identifies which aggravated arson count to attribute to the jury's split decision—something the jury pointed out during its deliberations to no avail. Coble contends the anomalies prevent appropriate appellate review of the State's evidence proving the crime of conviction's critical elements, especially the intent element of whether he "knowingly" damaged the apartment building through his actions associated with the jury's verdict. See K.S.A. 2019 Supp. 21-5812 (itemizing elements of aggravated arson). We agree.

These unique, but avoidable, circumstances make it impossible to determine the jury's verdict as to which crime it found Coble guilty of beyond a reasonable doubt. Our confidence in the propriety of Coble's conviction for this serious criminal charge is undermined by concerns for his due process rights. We reverse the conviction and remand the case to the district court for further proceedings. We do so recognizing double jeopardy issues may arise on remand if the prosecution continues. See *State v. Dale*, 312 Kan. 174, 178, 474 P.3d 291 (2020). That must be left initially to the district court and the parties on remand.

2

In the early morning on June 21, 2016, the Hutchinson Fire Department was dispatched to Coble's apartment, which is in a building with about 75 residents. When firefighters arrived, they found a small fire and light smoke. The sprinkler system had engaged, causing water to leak into the apartment below. Officer Ernie Underwood observed about an inch or two of water on the floor of Coble's apartment and scorch marks on the walls and ceiling. He saw lab equipment, such as beakers and test tubes, as well as drain cleaner, sulfur, salt peter, and household chemicals.

Multiple investigators gave similar testimony about the condition of Coble's apartment following the fire. Anthony Celeste, a state fire marshal investigator, gave a representative account accompanied by photographs he took at the scene. He pointed out wet kitty litter and glass fragments on the top of a chest freezer. He concluded the fire originated on top of the freezer. He also identified evidence of fire in the kitchen, consisting of "soot collection" and "charring" on the ceiling "close to above the sink." And he took the jury through photographs of a closet, noting charring on the door from past fires with soot and charring on the wall and ceiling. Celeste concluded the fire on the freezer top in the front room was "incendiary," which he defined as "a fire that's intentionally set in a place where fire should not be . . . ." He told the jury he could "clearly document" three incendiary fires—one on the freezer, one in the closet, and one in the kitchen.

When police encountered Coble the morning firefighters arrived, Coble had scarring from mid-chest level to his stomach, which he said were acid burns from "a flashover" during an experiment about a week and a half before. Coble explained to investigators on the scene and during a later interview with Federal Bureau of Alcohol,

3

Tobacco, and Firearms Agent Neil Tierney, that the trouble prompting the firefighters' response occurred while he was trying to produce a fire with a specific amount of heat.

Coble told Tierney he combined methyl ethyl ketone, which is a liquid solvent, with camp gas in a glass bowl on top of the freezer. He ignited this mixture by dropping burning wood into the bowl. He said this normally results in a small flash with a controlled flame, but this time he mistakenly let fumes from the chemicals build up before igniting the mixture. He thought he might have been distracted by his phone when this larger-than-normal flash happened. Water from the sprinkler system exacerbated the flare up and cracked the glass bowl.

Tierney also questioned Coble about the closet and kitchen damage. Coble said the closet damage was caused by toluene, which burns "dirty." Ashes found on the kitchen stove were from burning toluene in a flask on the stove. Coble said his stomach burns came from mixing muriatic or sulfuric acid with another material about a week and a half earlier. He said those events were the "worst." He also said he had performed an experiment on the "infusion rate of chlorine gas" that caused him some minor respiratory problems. Coble estimated he had performed at least 50 exothermic reactions—chemical events that generate heat—in his apartment in the last year. He guessed he had produced open fires 10 to 20 times.

Coble volunteered that much of what he did was for demonstrations to kids. Later, when asked why he was performing his experiments, Coble said he was trying to develop a metallic plastic that could be used in computer chips. He agreed he acted recklessly and said his arrogance caused him to believe he could control his experiments. He told Tierney he was "deficient in his P.P.E." When questioned about ingredients for explosives, Coble said he did not touch anything he did not believe he could control within a reasonable time.

4

At trial, Tierney said he believed Coble knew about chemistry and explosives. But when defense counsel asked if he believed Coble was aware of the hazards from the chemicals being used, Tierney hedged. He answered that "normally [he] would say, yes," noting Coble continued performing experiments after "get[ting] burned and creat[ing] chlorine gas that could have killed him . . . ." Tierney admitted Coble said "yeah, I shouldn't have done that." But Tierney then added, "It's almost as if he were not knowledgeable because he almost killed himself."

Coble testified at trial. He said he learned about chemicals mostly from school and college, with some knowledge self-taught. He denied trying to set a fire and did not think his experiments would cause a substantial risk of bodily harm. He thought he had control over the situations because of the kitty litter, and that if anyone would be harmed, it would have been him. He said he was unaware of any risks and did not know his apartment's sprinklers were heat-based. On cross-examination, Coble agreed he was "doing controlled flames in [his] apartment" and that he was trying to start a fire "[a]s much as anyone would light a candle." He denied trying to set fire to the building. Coble acknowledged what he was doing was "very, very reckless," but he did not believe it was dangerous. He conceded the experiments should have been done in a lab or away from people, or under someone else's supervision.

*The charging documents and jury instructions*

The State ultimately filed three complaints in this case:  the original one, an amended complaint filed the morning of trial, and a second amended complaint filed mid-trial. In each, the State set out three indistinguishable aggravated arson counts. The first amended complaint exemplifies how the State charged the three offenses. Each read:

5

"That on or about the 21st day of June, 2016, in Reno County, Kansas, **CHASE L COBLE**, then and there being present did unlawfully, feloniously, and knowingly, by means of fire or explosive, damage any building or property, to-wit: **Apartment Building located at 17 East 2nd, Hutchinson, Kansas**, which is a dwelling, in which another person, to-wit: Ray Siebert has any interest, without the consent of such other person, committed upon a building or property in which there is a human being, and resulting in a substantial risk of bodily harm."

In other words, each count was alleged to have occurred "on or about the 21st day of June, 2016," but with no other identifying characteristics differentiating one alleged incident from the others.

In submitting these three aggravated arson charges to the jury, the district court repeated the State's charging tactic by giving identical jury instructions for each. For example, jury instruction number 6 provided,

"In Count 1, Chase Coble is charged with aggravated arson. Chase Coble pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Chase Coble committed arson by knowingly, by means of fire or an explosive, damaging a building in which Ray Siebert had an interest, without the consent of Ray Siebert.

"2. At the time there was a human being in the building.

"3. The fire or explosion resulted in a substantial risk of bodily harm.

"4. This act occurred *on or about the 21st day of June, 2016*, in Reno County, Kansas." (Emphasis added.)

6

The only difference between instruction 6 and the instructions for the two other counts was the count number referenced. And without further detail, the court instructed the jury:

> "Each crime charged against Chase Coble is a separate and distinct offense. You must decide each charge separately on the evidence and the law applicable to it, uninfluenced by your decision as to any other charge. Chase Coble may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

As to the mental state required for an aggravated arson conviction, the court instructed the jury that "The State must prove that Chase Coble committed aggravated arson knowingly. A defendant acts knowingly when the defendant is aware that *his conduct was reasonably certain to cause the result complained about by the State*." (Emphasis added.) Instruction 13 informed the jury, "Your agreement upon a verdict must be unanimous." And in keeping with the nondescript style used in the complaint and the jury instructions, the jury's verdict form was identical for each aggravated arson count. For example, Count One stated: "Count One. We, the jury, find Chase Coble as to aggravated arson: Guilty____ Not Guilty ___." The others were the same.

*Closing arguments*

The prosecutor noted in closing there were three separate incidents that caused damage in three areas of the apartment—the closet, another in the kitchen, and "the one near the entryway that caused the smoke alarms to go off and sprinkler systems and that's what caused us all to be here today." The prosecutor argued Coble "knew exactly what he was doing." The only thing the prosecutor said about which count was linked to which factual scenario was:

7

"The law says that in order to find the defendant guilty you have to be convinced beyond a reasonable doubt of the claims made by the [S]tate and those claims are in the elements. *We know that there were three separate exothermic reactions whether they're fires or explosions or whatever that caused damage to three different areas of the apartment; one in a closet, one in the kitchen, and then the one near the entryway that caused the smoke alarms to go off and sprinkler systems and that's what caused us all to be here today.*

"*We know the last one occurred on June the 21st of 2016. The others occurred sometime before and I will point out that if you look at the elements it says that the [S]tate has to prove that the crimes, the three crimes charged occurred on or about June the 21st of 2016. Doesn't have to have occurred on June the 21st of 2016, it could have occurred about, around June the 21st of 2016.* So long as it's within the statute of limitations. We don't know a precise date when those other events occurred." (Emphases added.)

Defense counsel's closing focused mainly on the June 21 incident. As to the remaining counts, defense counsel contended, "*Counts two and three were never specified* nor were they proven by the [S]tate. There was vague mention of other minor damage in the apartment, but never addressed with any specificity. Therefore you must return a verdict of not guilty on those two counts." (Emphasis added.) And as to the crimes' mental state element, she argued,

"Did Chase knowingly set a fire or cause an explosion which damaged the apartment? No, he did not.

"He was conducting an experiment to meld plastic and metal to create a super little computer component that he could use and market to create something that would benefit all of society . . . ."

8

*The jury's question*

During deliberations, the jury asked, "Do the three counts apply to specific locations or events *and if they do, which ones belong to which counts*?" (Emphasis added.) The court conferred with the attorneys and Coble. The following exchange occurred:

> "[The court]:  My suggestion, counsel, is you are referred to the instructions the court gave you.

> "[Defense counsel]:  That's, that's my opinion.

> "[The court]:  Okay. Mr. Schroeder?

> "[Prosecutor]:  Judge, in my proposed instructions I included the multiple acts instruction that's pointing you to PIK 68.100. And the multiple acts instruction advises the jury that they have to unanimously agree upon the act in each count. And they, the comments refer to a situation like this.

> "The court didn't do that. I don't object to the instruction you're giving them, but I, the [S]tate suggests that you supplement the answer with 68.100.

> "[The court]:  And just to reiterate, [defense counsel], you do not join in that request?

> "[Defense counsel]:  That is correct, Your Honor. I don't think it's appropriate to add an instruction at this point."

The instruction the prosecutor proposed was initially requested for some criminal use of explosives charges that were dismissed before the case was submitted to the jury. It would have provided, "The State claims multiple acts which each could separately

9

constitute the crime of criminal use of explosives. In order for the defendant to be found guilty of criminal use of explosives, you must unanimously agree upon the same underlying act."

The district court decided to respond to the jury's question by stating: "[Y]ou are referred to the instructions the court gave you."

When the jury returned its verdict, it had checked "Guilty" for Count One. It checked "Not guilty" for the other two. The district court sentenced Coble to 66 months' imprisonment. Coble appealed.

*The Court of Appeals decision*

Coble raised two issues on appeal. First, he argued the use of nondescript jury instructions for each aggravated arson count made the jury's outcome hopelessly ambiguous. He contended this required reversal because it prevented meaningful appellate review of the evidence's sufficiency for the convicted crime, as no one knows what conduct comprised the count the jury convicted him of, or what conduct comprised the acquittals. Second, he contended in the alternative there was insufficient evidence to support conviction for any of the three incidents identified by the State because the prosecution failed to prove Coble knowingly caused damage to the apartment building. He also claimed it failed to show the apartment building was occupied when the closet and kitchen incidents occurred on the unknown dates.

A Court of Appeals panel affirmed. *State v. Coble*, No. 118,382, 2019 WL 3367365, at *3-4 (Kan. App. 2019) (unpublished opinion). It reached three holdings. First, it held Coble "invited the ambiguity" he complained about in the jury instructions when he argued "against the State's clarifying instruction." 2019 WL 3367365, at *3.

Second, the panel held there was no jury confusion about which count went with which factual scenario because the parties' closing arguments made that clear. In the panel's view, Count One—the count resulting in the guilty verdict—referred to the June 21 fire. Finally, it held sufficient evidence demonstrating the June 21 incident supported Coble's conviction on Count One. 2019 WL 3367365, at *4.

Coble petitioned this court for review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

INVITED ERROR

We consider first the panel's conclusion that Coble cannot challenge the verdict's ambiguity because he invited it when his counsel objected to the State's suggestion to give a unanimity instruction in response to the jury's question. *Coble*, 2019 WL 3367365, at *3. We disagree. The State's suggestion and Coble's objection to that suggestion were meaningless to the problem at hand because the State's proposed solution would not have corrected it.

For clarity, recall that the State's notion was to give an instruction along these lines: The State claims multiple acts which each separately constitute the crime of aggravated arson. In order for the defendant to be found guilty of aggravated arson, you must unanimously agree upon the same underlying act.

Had it been given, this would have simply told the jury to agree unanimously among themselves on the same underlying facts if they found the defendant guilty on any

11

count. But it would not have helped a reviewing court differentiate between the jury's guilty finding (Count One) and its acquittals (Counts Two and Three).

A unanimity instruction is a tool used in multiple acts cases when incidents that are legally and factually separate can independently satisfy the elements of a charged offense. *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014). The unanimity instruction is designed to ensure the jury agreed on a single set of those facts before convicting when a single offense can be committed in more than one way. *State v. Cottrell*, 310 Kan. 150, 154, 445 P.3d 1132 (2019); see also K.S.A. 22-3421 (requiring jury unanimity). But the problem in Coble's case has a more confounding layer beyond evidence of multiple acts because each act could satisfy the elements of any one of the multiple charges.

The State alleged three separate counts, intending that each be linked to a different incident. The prosecutor explained in his closing argument, one count was associated with the closet, another with the kitchen, and "the one near the entryway that caused the smoke alarms to go off and sprinkler systems and that's what caused us all to be here today." And all we know from the record is that the jury convicted on Count One, and acquitted on the other two. The question Coble asks remains—which incident did the jury believe comprised the count of conviction? A unanimity instruction designed to ensure the jury agreed on a single set of those facts when a single offense is charged would not help a reviewing court associate a particular, alleged factual scenario with any of the three generic counts presented to that jury.

We appreciate there is no bright-line rule for when the invited error rule applies. But we have explained that "when a defendant actively pursues what is later argued to be an error, then the doctrine most certainly applies." *State v. Sasser*, 305 Kan. 1231, 1236, 391 P.3d 698 (2017); see also *State v. Pattillo*, 311 Kan. 995, 1014, 469 P.3d 1250

12

(2020). This necessarily means the defendant's advocacy has to be linked to the adverse impact of the error claimed on appeal. For example, in *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 (2008), the invited error doctrine barred review of a defendant's assertion of error for not giving a lesser included offense instruction when the defendant refused the court's offer to give that instruction. But here, the State's proposed instruction that Coble objected to could not have solved the problem because no necessary link exists between his advocacy and the alleged error before us.

The panel's holding that Coble invited the error he complains of is plainly wrong given what was proposed as the solution. The error Coble advances on appeal would not have been averted by the State's suggestion.

MEANINGFUL AND EFFECTIVE APPELLATE REVIEW

Despite its invited error ruling, which would have normally ended Coble's appeal at the Court of Appeals, the panel went on to pursue the analytical challenge presented. It tried to figure out for itself which of the three generic counts applied to the jury's guilty verdict. This, of course, underscores the importance of being able to associate the alleged factual scenario with the count of conviction in these circumstances. And had the panel succeeded in this task, the sufficiency of the evidence considerations would have had sharper focus for appellate review. But the panel's rationale does not support its conclusion, so the jury's outcome remains an enigma.

The panel concluded the jury convicted Coble on the June 21 incident, which makes it the elusive Count 1. *Coble*, 2019 WL 3367365, at *3 ("[T]he record shows that both parties' closing arguments to the jurors informed them that the event on June 21, 2016, was reflected in Count 1."). To get there, it first noted that after the State rested, Coble's attorney moved for a judgment of acquittal on Counts Two and Three, arguing

13

there was no evidence to verify when they occurred. 2019 WL 3367365, at *3. And from this it concluded the defense at least understood Count One was the June 21 incident, so there was no confusion among the parties about which count was aligned with which set of facts. Next, the panel found the parties' arguments to the jury "*informed them* that the event on June 21, 2016, was reflected in Count 1." (Emphasis added.) 2019 WL 3367365, at *3. The panel explained its thinking as follows:

> "The State argued there were three events: one was in a closet; one was in the kitchen; and 'one near the entryway that caused the smoke alarms to go off and sprinkler systems and that's what caused us all to be here today. We know the last one occurred on June the 21st of 2016. The others occurred sometime before . . . .'

> "Coble's attorney argued at length to the jury about the elements of aggravated arson and whether the State met its burden to prove those elements for the event on June 21, 2016. She then separated her argument from the events of June 21, 2016, and succinctly argued, 'Counts Two and Three were never specified nor were they proven by the [S]tate. There was vague mention of other minor damage in the apartment, but never addressed with any specificity. Therefore you must return a verdict of not guilty on those two counts.' The jury did so.

> "*Given this record we see no ambiguity in the jury's verdict. The arguments of both parties steered the jury into considering Count 1 applied to the fire of June 21.* That means the real question remains. Did the State prove Coble guilty beyond a reasonable doubt on Count 1? We will proceed to the sufficiency of the evidence." (Emphasis added.) 2019 WL 3367365, at *3-4.

Through this exercise, the panel appropriately focused its inquiry on trying to determine what the jury understood in being able to associate the charges with the instructions and verdict form. But we fail to see any clarity. In its closing, the State sequenced the events chronologically and described the June 21 incident as the last one,

14

while the defense sequenced the charges with Count One as the June 21 occurrence. Was the jury to believe the State or the defense? And we fail to see any relevance in terms of what the jury understood from the court conference with counsel which happened outside the jury's presence.

In *State v. Brown*, 311 Kan. 527, 464 P.3d 938 (2020), the court wrestled with an internally inconsistent verdict form. The *Brown* court held, "An ambiguous verdict can be reasonably interpreted in light of the charging document, the jury instructions, and the record as a whole to determine *and give effect to the jury's intent*." (Emphasis added.) 311 Kan. 527, Syl. ¶ 1. And in applying that principle to the facts in *Brown*, the court concluded that even though there was some doubt over the meaning of the jury's verdict, aspects of the record proved the jury's intent with the requisite certainty. The *Brown* court held that "we are convinced (as was the district court) *beyond a reasonable doubt that the jury intended to convict Brown of attempted voluntary manslaughter*." (Emphasis added.) 311 Kan. at 539. But in Coble's case the record does not permit any degree of certainty, let alone any that rises to the demanding standard of beyond a reasonable doubt.

As noted, the panel's reference to counsels' statements during arguments on a motion for judgment of acquittal was misplaced because it was outside the jury's presence. That exchange cannot illuminate what the jury may have been thinking in convicting on one count and acquitting on two others. And as to closing arguments, the State did not differentiate the facts associated with the separately listed charges, and its sequencing suggests a chronological listing of the counts culminating with the June 21 incident, rather than the reverse as the panel concluded.

Based on the arguably conflicting remarks from counsel as to how the evidence corresponded to the charges, the question remains: Was the June 21 incident in the jury's mind the first count on the jury verdict form's sequencing or "the last one" as the

15

prosecutor said? The prosecutor's comments do nothing to clarify that. And this uncertainty is reinforced by the jury's question wondering, "Do the three counts apply to specific locations or events *and if they do, which ones belong to which counts*?" (Emphasis added.) The district court's failure to answer that question gave the jury no help because all it did was refer back to the same generic instructions the jurors had already found puzzling. And while the referral-back approach may be appropriate under some circumstances, it did not help solve this obvious quandary.

We hold the panel's conclusion about the jury's understanding of the sequencing of the counts in the instructions and verdict form is unsupported on this record. We cannot discern the jury's intent, as we have in other circumstances. See *Brown*, 311 Kan. 527, Syl. ¶ 1. Given this, what alternatives are left?

In a criminal case, when a defendant challenges the evidence's sufficiency to support a conviction, an appellate court examines the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *Pattillo*, 311 Kan. at 1003. We do that because our task is "to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt," not whether we "believe[ ] that the evidence . . . established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). This standard of review

> "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent

16

necessary to guarantee the fundamental protection of due process of law." 443 U.S. at 319.

But this is a function we cannot perform on this record. And we are sufficiently troubled by the uncertain circumstances of Coble's conviction and acquittals that we must reverse the conviction and remand the case for additional proceedings. The underlying premise of Coble's argument is that the manner in which the district court explained the charges to the jury was fatally infirm because the court cannot say with any degree of certainty which act the jury found constituted aggravated arson. And on these facts, we agree. Admittedly, the exact nature of the error defies ready classification, but we cannot tell what conduct constituted the crime of conviction among the choices facing the jury and given their acquittal on two counts. This deserves a fuller explanation.

To begin with, the charging documents and jury instructions touch upon the due process requirement that a defendant have notice of the charges against him. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused . . . in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948). The State put on evidence of multiple incidents, but the lack of specificity in its charging document or the court's jury instructions about which incident belonged to which count hinders Coble's ability on appeal to argue against criminal liability for each of the incidents that were alleged on a separate basis. And the parties' closing arguments reflecting that defense counsel and the State were not on the same page about which count covered which event highlights the difficulty presented for Coble's defense—and that difficulty permeated the entire proceedings.

17

By failing to distinguish between its three counts, the State effectively presented three identical multiple acts charges to the jury, i.e., each incident reflected in the evidence could satisfy each of the three charges. And since the charges were indistinguishable and no instruction identified the counts, we cannot be sure all the jurors focused on the June 21 incident or one of the others given the confusing arguments presented by counsel and lack of direction from the court in its instructions and verdict form.

This confusion is somewhat analogous to a circumstance when an incomplete trial transcript frustrates appellate review. See *State v. Holt*, 298 Kan. 531, 537-38, 314 P.3d 870 (2013) ("Adequate and effective appellate review is impossible without a trial transcript or an 'adequate substitute.' In the context of a criminal prosecution, due process requires a reasonably accurate and complete record of the trial proceeding in order to allow meaningful and effective appellate review. [Citations omitted.]"). The deficiency offends due process by defeating the defendant's substantive right to appellate review, and "*the proper remedy is to reverse and remand for a new trial*." (Emphasis added.) 298 Kan. at 538. The trial record here, though complete, still makes it impossible to conclude with confidence that sufficient evidence supports the jury's verdict.

The Wyoming Supreme Court, under similar circumstances to Coble's case, concluded reversal was the appropriate remedy when the defendant was charged with and convicted of three identical counts of a crime, and the evidence established at least three separate incidents that could each constitute any one of the counts. *Heywood v. State*, 170 P.3d 1227, 1235-36 (Wyo. 2007), *abrogated on other grounds by Granzer v. State*, 193 P.3d 266 (Wyo. 2008). The defendant gave different innocent explanations for each incident. The jury asked during deliberations, "[W]hat crime it was to deliberate upon under each of the three counts." 170 P.3d at 1234. Their question was not answered. On

18

appeal, the defendant challenged the convictions, arguing the refusal to answer the question was plain error. The court agreed, explaining:

> "In light of all we have said above, we conclude that the district court committed prejudicial error in failing to provide a substantive answer to the jury's question in this case, if the paper in the file was, indeed, a jury question. *Even without that error, the instructions were inadequate. The fundamental problem is that, contrary to law, we are left in doubt as to the circumstances under which a crime was found to have been committed under any of the three counts*. The jury clearly could have been confused as to what the charge was under each count, and the judge apparently did not clear up that confusion. The reason that the jury could have been confused, of course, is the fact that neither the Information, nor the elements instruction, nor the verdict form, was properly drafted. *Beyond that, not only is the jury supposed to consider the evidence as it applies to each count, one by one, which was impossible to do in this case*, but the judge is to sentence on each count, with the nature of the offense being part of the sentencing consideration. That was also impossible for him to do." (Emphases added.) *Heywood*, 170 P.3d at 1235.

Similarly, our due process concerns compel us to reverse Coble's conviction and remand this case to the district court for additional proceedings. This result arises from the specific circumstances presented: (1) the State charged three identical counts of aggravated arson; (2) the jury instructions and verdict form failed to distinguish between those counts; (3) the jury expressed its confusion about aligning the instructions and verdict form with the generic counts alleged; (4) that confusion was not ameliorated by the court or in the record; (5) the jury convicted on one count while acquitting on the others; and (6) the arguable insufficiency of the evidence to support some or all of the convictions Coble points out in his appellate briefing.

We acknowledge the district court on remand may have double jeopardy issues to contend with if the prosecution continues. *Dale*, 312 Kan. at 178. We leave that to the district court and the parties for now.

Reversed and remanded.

SCOTT SHOWALTER, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Showalter was appointed to hear case No. 118,382 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Carol A. Beier.